The Freehold Mutual Loan Association

*v.*

Stewart Brown and others.

The Revision of 1874–5, repealing and re-enacting, but with some important changes, a general corporation act, does not preclude a corporation existing under that act from exercising the rights conferred

by it, but not contained in the act as revised. Though the privileges conferred by the act are subject to alteration and repeal, the legislation, to affect either, must be express, or such that a necessary implication arises therefrom.

Bill to foreclose. On final hearing on pleadings, and written agreement as to facts.

*Mr. C. Robins*, for complainants.

*Mr. J. W. Swartz*, for Stewart Brown.

THE CHANCELLOR.

The complainants were incorporated in 1869, under the "act to encourage the establishment of mutual loan and building associations," approved February 28th, 1849. (*Nix. Dig.* p. 92.) By the fifth section of that act it is provided that the investments of the association which may be incorporated under the act, shall be made either in loans to, or in redemption of the shares of, or in purchasing lots and erecting dwellings for, the members, or in all of those modes, as the constitution of the particular association shall provide ; and that no premium given for priority of loan or acquisition of a building, or discount given on the redemption of shares, shall be deemed to be usurious. By the seventh section it is provided that the legislature may at any time alter, amend or repeal the charter of any association created under the act.

In the revision of the statutes, that act and the act incorporating homestead and building companies were consolidated, and the provision of the seventh section of the former, that no premium given for priority of loan or acquisition of a building, or discount given on the redemption of shares, shall be deemed to be usurious, was omitted. It was, however, re-enacted in 1876. (*P. L.* 1876, pp. 22, 242.)

The company sold the defendant, Stewart Brown, certain loans at a premium, on the 4th of June, 1875, and certain

other loans at a premium, on the 3d of March, 1876, and at the respective times of purchasing the loans, Brown assigned to the company certain shares of its stock as security for the repayment of the loans, and gave his bond and mortgage, also, as security. The premium thus agreed to be paid by him was deducted from the amount of the loans. The amount deducted on the first transaction was $460, on twenty shares of stock, of the par value of $4,000, and he received the balance, $3,540. On the other the amount deducted was $210 on the like number of shares of the like value, and he received the balance, $3,790. The company filed their bill in this cause for the foreclosure of the mortgages and sale of the mortgaged premises. Brown, in his answer, sets up the defence of usury to both mortgages.

One of the acts of 1876, above referred to, was approved on the 29th of February, 1876, and the other on the 21st of April of that year, and both by their terms took effect immediately.

The mortgage of March 3d, 1876, having been executed, and the contract for the loan, which it secured, made after the approval of the act of February 29th, 1876, the defence of usury is, of course, not sustained as to that mortgage. Nor is it sustained as to the other, which was given on the 4th of June, 1875. Notwithstanding the fact that the repealer of the act of 1849 took effect on the 1st of May, 1875, and although the provision authorizing the taking of premiums for priority of loans was not re-enacted until February 29th, 1876, the complainants had, in the interim, lawful authority to take such premiums. The revision did not repeal or amend their charter. Nor did it affect it. It did not purport to do either. The charter of the complainants was derived under the act of 1849, and they possessed, when they were incorporated, all the powers which that act conferred, and they have ever since retained them, notwithstanding the alteration of the act by the revision. If the act had been repealed altogether, that repeal would not have repealed the complainants' charter. *Donworth* v. *Cool-*

*baugh,* 5 *Clarke* (*Ia.*) 300. But the act was never repealed, except for the purposes of revision. Its repealer took effect on the 1st day of March, 1875, and the revised act went into operation on the same instant that the repealer took effect. The repealer, therefore, had no effect upon the franchises of the complainants.

In *Middleton* v. *N. J. West Line R. R. Co.*, 11 *C. E. Gr.* 81, it was held that a power given by an act repealed in a revision, but which, by the revision, was re-enacted in the same instant that it was repealed, so that there never was a moment when the act repealed was not in force, was not taken away by the repealer. The fact that in the revised act no provision was made for the legalization of the taking of the premiums for priority of loans, did not, of itself, deprive the complainants of their vested rights to take such premiums under their charter. That right was conferred on them by the act of 1849, and could not be taken from them, except by express legislation, or by legislation from which a necessary implication arose that the legislature intended to deprive them of it. The legislature reserved, in the act of 1849, as before stated, the right to repeal or amend the charters of the companies organized under that act. It has neither repealed nor amended that of the complainants.

There will be a decree for the complainants, in accordance with the views above expressed.